UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELEANOR LAUDERDALE, ) | |
| Plaintiff ) | |
| v. ) | Civil Action No.: 06-0955 (CKK) |
| DOUGLAS F. SMALL, ) | |
| Defendant ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO AMEND CASE CAPTION

### Background

Plaintiff, Eleanor Lauderdale, filed for an order of protection in D.C. Superior Court because she felt threatened by the actions of defendant, Douglas F. Small. Ms. Lauderdale is the Executive Vice President of the American Federation of Government Employees Local 12. At the time of the incident that gave rise to Ms. Lauderdale's complaint, Douglas Small was a supervisor in the Employment Training Administration of the U.S. Department of Labor. On May 1, 2006, Ms. Lauderdale met with Douglas Small to discuss a grievance. Also present at the meeting were Charles Welborn, the grievant, and a labor relations specialist. After debating the issue at hand for some time, Douglas Small announced that the meeting was over. Ms. Lauderdale asked that he put his position as to the grievance in writing, and he agreed to do so.

As Douglas Small was exiting the room, he shouted to Ms. Lauderdale, that the next time she met with him, she had better do her homework. Because he was a good distance in front of

her, Ms. Lauderdale retorted that she had done her homework, and that he had best do his.[1] At that point, Douglas Small changed direction, turned around and headed back towards Ms. Lauderdale. With an ink pen between his balled-up fist, he shook his fist in Ms. Lauderdale's face, within approximately two inches of her eyeglasses, and demanded that she never again tell him what to do.

Thereafter, Ms. Lauderdale returned to her office and called the Federal Protective Service. The Service as well as the Deputy Head of Security, Mr. Robert Rouse, declined to take any action against Douglas Small or to give Ms. Lauderdale any assurance of her safety in the Department of Labor building. Consequently, Ms. Lauderdale felt compelled to seek a protective order from D.C. Superior Court.

It is noteworthy that in all of the documents filed, defendant *does not deny the facts* of the incident that gave rise to this litigation as laid out by the plaintiff. Therefore, in considering whether to dismiss this claim, and in looking at the facts in the light most favorable to the non-moving party, *Conley* v. *Gibson.*, 355 U.S. 41, 45-46 (1957); *Sinclair* v. *Keindienst*, 711 F.2d 291, 293 (D.C. Cir), the court must acknowledge that the facts of this case are undisputed.

### Removal of the Case from D.C. Superior Court

Pursuant to the Westfall Act, 28 U.S.C. §2679, the U.S. Attorney's Office exercised its unbridled discretion and removed the complaint from D.C. Superior Court to the U.S. District Court for the District of Columbia. In so doing, the U.S. Attorney reshaped the complaint and redefined the essence of plaintiff's right of action. The preliminary application of the Westfall Act presupposes the validity of an issue that must subsequently be addressed by the court – whether the defendant was acting within the scope of his employment. Before considering this matter, we must look at the effect the removal of the case has had on the substance of the complaint.

The complaint was not merely removed from D.C. Superior Court, it was revised by the Office of the U.S. Attorney to create compatibility with the type of remedy available in federal court as

---

[1] As things evolved, Mr. Small recognized that he had erred in taking action against the grievant, and on that day rescinded the charge of AWOL that he had imposed on the grievant.

opposed to the relief sought by plaintiff through the District of Columbia system.[2] The alteration of the complaint has cloaked the plaintiff's complaint in three erroneous spheres.

First, the U.S. Attorney has stated incorrectly that the complaint is subject to the Federal Torts Claim Act, 28 U.S.C. §2671 *et seq.* That statute applies to claims filed against the federal government wherein money damages are sought.[3] In the instant case, plaintiff did not seek money damages. She merely sought the protection of the court from an abusive individual when her agency failed to take any action whatsoever to assure her safety. She specifically requested as a remedy that the D.C. Superior Court order the defendant to "keep a distance of 25 feet away from" her. It is inexplicable how the U.S. Attorney now asserts that the complaint "runs afoul of 28 U.S.C. §2680(h), barring money damages claims against the United States sounding in assault." Defendant's Memorandum In Support of Its Motion To Dismiss at p.4.

Secondly, the U.S. Attorney argues that, given the applicability of the Federal Torts Claim Act, plaintiff has failed to exhaust the administrative remedies that are precedent to filing a claim under the Act.[4] This is a spurious argument. Inasmuch as the plaintiff never filed an action under the Federal Torts Claim Act, and inasmuch as her complaint does not even make a plea that might be construed as falling within the purview of that statute, there was no duty upon plaintiff to pursue the prerequisite administrative remedies appurtenant to the Federal Torts Claim Act.

---

[2] Further, it is noted that orders of protection are generally issued by municipal courts that have the wherewithal to monitor the orders. By removing plaintiff's complaint to federal court, the U.S. Attorney's Office has effectively precluded the requested remedy.

[3] The complaint is clear on its face. Contrary to the type of state tort law suit for money damages that the Supreme Court sought to shield federal employees from by its decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), the complaint in this case sought neither compensatory nor punitive damages.

[4] Though not clearly spelled out in Defendant's Memorandum In Support of Its Motion To Dismiss, the administrative process alluded to by the U.S. Attorney would be the filing of a claim under the Federal Employees Compensation Act, 5 U.S.C. §8101, *et seq.* (FECA). FECA, which is administered by the Department of Labor, is a workers' compensation statute that provides remedial relief for injuries sustained on the worksite. FECA does not provide for prospective relief; it does not have a provision to assure that future injury will not befall an employee. That is what plaintiff sought in her complaint to the D.C. Superior Court – an order to assure that in the future she would not be assaulted by the defendant. Contrary to the U.S. Attorney's assertion, (at p. 12), plaintiff never alleged that she suffered an injury. Thus, FECA has no bearing whatsoever on this case.

Finally, the U.S. Attorney asserts that the government's sovereign immunity precludes plaintiff from pursuing relief in this case. The question of the sovereign immunity arises only if this court finds that the defendant, in perpetrating an assault, was acting within the scope of his employment. Plaintiff does not dispute that the federal government is protected against numerous legal actions because of sovereign immunity. What plaintiff argues here is that the defendant was not acting within the scope of his employment, that the government should not be substituted as defendant, and that therefore, sovereign immunity is inapplicable in the instant case.

### Defining the Term "Within the Scope of Employment"

The U.S. Attorney maintains that the action was removed to federal court because the defendant cannot be held personally responsible for his actions because he was performing duties within the scope of his employment when he threatened the plaintiff. The U.S. Attorney argues that, therefore, the named defendant, Douglas Small, must be replaced by the U.S. Government as the defendant. Plaintiff maintains, however, that pursuant to the applicable case law, the defendant was not acting within the scope of his employment, and therefore, should be held personally responsible for his behavior.

Under the Westfall Act, "immunity from state tort lawsuits for money damages"[5] and removal to federal court are predicated only on the finding that the federal employee was acting within the scope of his/her employment. The U.S. Court of Appeals for the District of Columbia has addressed the significance of the removal process. Specifically, the court stated as follows:

> Under the Westfall Act, an Attorney General or designee who believes that a federal employee was acting within the scope of employment at the time of the alleged incident may issue a certification to that effect. 28 U.S.C. § 2679(d)(2) (certification by Attorney General); 28 C.F.R. § 15.3 (1995) (certification by designee). Where, as here, the lawsuit is initially filed in state court, this certification has three consequences: it requires the Attorney General to remove the lawsuit to the local federal court; it requires the substitution of the United States for the federal employee as the defendant in the lawsuit; and it converts the lawsuit into an action against the United States under the Federal Tort Claims Act. 28 U.S.C. § 2679(d)(2). *Although the Westfall Act makes Attorney General*

---

[5] This case warrants reiterating that no money damages were ever demanded in the complaint, solely an order of protection. Thus, in responding to these arguments laid out by the U.S. Attorney, plaintiff does not concede the applicability of the Federal Torts Claim Act.

4

> *certification conclusive for purposes of removal, the Supreme Court recently held that it is not conclusive regarding substitution of the federal government. Lamagno, 515 U.S. at ---- - ----, 115 S.Ct. at 2235-36. Instead, the federal court may determine independently whether the employee acted within the scope of employment and, therefore, whether to substitute the federal government as the proper defendant. Id. at ----, 115 S.Ct. at 2236; Kimbro, 30 F.3d at 1505. (Emphasis added.).... If...the federal court determines that the employee acted* outside *the scope of employment, the court must resubstitute the federal employee as the defendant. See Lamagno, 515 U.S. at ----, 115 S.Ct. at 2236.*

*Haddon v. U.S.*, 63 F.3d 1420, 1423 (D.C. Cir. 1995). The salient point here is that removal of the case to the federal forum does not presuppose the propriety of substituting the federal government as defendant. That is a finding of fact that should be made by the district court. *Haddon, supra,* also established the parameters for discerning the concept of "acting within the scope of employment." The *Haddon* court stated that

> [a]s its framework for determining whether an employee acted within the scope of employment, the Court of Appeals for the District of Columbia looks to the Restatement (Second) of Agency (1957). *Moseley v. Second New St. Paul Baptist Church,* 534 A.2d 346, 348 n. 4 (D.C.1987). According to the Restatement, the[c]onduct of a servant is within the scope of employment if, but only if: [1] it is of the kind he is employed to perform; [2] it occurs substantially within the authorized time and space limits; [3] it is actuated, at least in part, by a purpose to serve the master; and [4] if force is intentionally used by the servant against another, the use of force is not unexpected by the master. Restatement (Second) of Agency § 228.

At 1423-1424. Applying this framework to the instant case, it is clear that in assaulting the plaintiff, the defendant was not acting within the scope of his employment. First, it is noted that although the defendant was employed as a supervisor, and charged with participating in the resolution of labor-management disputes, nothing in the performance of his duties suggested that he had a mandate, or even a right, to shake his fist in the face of another employee, particularly a female who could not defend herself against him. In fact, all of the Department of Labor's statements regarding workplace violence connote that this is exactly what employees are admonished should not be done. *See* Department of Labor LaborNet – *Strategies for Reducing Violence in the Workplace.* Designees of he Secretary of Labor, along with union officials and employees of the Occupational Safety and Health Administration have been trying to formulate a Departmental policy regarding workplace bullying. Even if the court determines that Douglas Small's

actions did not constitute an assault, it is inescapable that his actions were a form of bullying. This is the antithesis of his assigned duties.

Next, plaintiff does not take issue with the fact that the incident in question occurred substantially "within the authorized time and space limits." However, plaintiff points out that defendant's tirade commenced after the meeting was officially declared over, and after the parties had left the meeting room. In fact, as the charging documents state, the defendant had his back to the plaintiff, and turned around to step in her direction to confront her. The act of turning around to confront the plaintiff was a hostile act, given that the defendant was exiting the meeting area.

Clearly, defendant's actions do not meet the third prong of the test. The purpose of his confrontation with the plaintiff was not to serve the purpose of the employer. The defendant was personally angry with the plaintiff and confronted her in a belligerent manner, demanding that plaintiff had better "never tell [him] what to do." This attack was totally personal; it had nothing to do with defendant's responsibility to address the labor-management issue at hand.

Finally, and most importantly, the defendant's intentional use of force was clearly unexpected by the employer, particularly in view of the nature of the meeting and the stature of the parties meeting. The defendant's actions were not foreseeable; they were not "a direct outgrowth of the employee's instructions or job assignment." *Boykin v. District of Columbia,* 484 A.2d 560, 562 (D.C.1984) (quoting *Penn Cent. Transportation. Co. v. Reddick,* 398 A.2d 27, 32 (D.C.1979). While discord may be expected at a labor-management meeting, in the plaintiff's twenty years of union activism she has never encountered, or even witnessed, the threatening behavior demonstrated by the defendant. In all the years of participating in vigorous labor-management disputes, the plaintiff has never felt compelled to call the Departmental security force and certainly has never sought judicial intervention. Despite the fact that the Department of Labor declined to take any action with respect to the defendant to assure the plaintiff's safety, as the defendant's employer, the Department of Labor certainly does not expect or condone the bullying actions perpetrated by the defendant. Therefore, the defendant fails to meet the requirements of the fourth prong of the test.

### The United States Should Not Be Substituted For The Named Defendant

The criteria for establishing that a defendant's actions come within the scope of his employment are written in the conjunctive. In *Haddon,* the court applied each criterion to the defendant's actions to discern whether his actions took place within the scope of his employment. The court noted that it would not find employees' actions to be within the scope of their employment when the intentional torts do not "arise directly from the performance of their authorized duties." At 1425. This is the crux of the instant case. Unless the Department of Labor is prepared to argue that it has instructed its male manager's to physically intimidate female employees, the defendant's actions cannot be deemed to have arisen directly from the performance of his authorized duties. Thus, the court should find that the defendant was not acting within the scope of his employment, and that therefore, the United States cannot be substituted for the named defendant.

### This Case Should be Remanded to D.C. Superior Court

In *Haddon,* the Court of Appeals held that if the federal court finds that the defendant employee was not acting within the scope of his employment, the case should be remanded to the state court. Specifically, the court stated as follows:

> Congress intended the [Westfall] Act 'to protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States.' § 2, 102 Stat. at 4564. Allowing federal courts to try garden-variety tort suits following a judicial determination that the federal employees acted *outside* the scope of employment would not serve Congress's objectives.

Thus, given a finding that Douglas Small did not act within the scope of his employment, this case should be remanded to D.C. Superior Court.

### Conclusion

In attempting to have plaintiff's complaint dismissed, the U.S. Attorney has not addressed the complaint filed by plaintiff, but rather has created a whole that bears no resemblance to what was filed. It even suggests that plaintiff sought money damages, which clearly was not done. In creating a complaint scenario that is non-existent, the U.S. Attorney has similarly set out requirements to sustaining an action against Douglas Small which do not relate to the complaint filed by plaintiff.

It is clear that in any instance in which the defendant is given the opportunity to reframe the complaint, the defendant will always win. Defendant will, of course, place the heaviest burden of proof available upon the plaintiff. Plaintiff should only have to carry the burden of the complaint that she actually filed, not the one created by defendant.

The undisputed facts of the incident show that Douglas Small was not acting within the scope of his employment. This showing drives all other determinations that should be made in this case. Because defendant was acting in his individual capacity, the U.S. Government should not be substituted as defendant. Accordingly, the Federal Torts Claim Act and sovereign immunity are inapplicable to this case. Further, given that plaintiff never claimed an injury in her complaint, she could not seek a remedy under FECA. Plaintiff's remedy can only be obtained in D.C. Superior Court. Wherefore, plaintiff requests that the case be remanded to D.C. Superior Court.

August 23, 2006

Respectfully submitted,

*Eleanor Lauderdale*
Eleanor Lauderdale
*Pro Se*

901 Northwest Drive
Silver Spring, Maryland 20901
(202)219-6941
lauderdale-eleanor@dol.gov

# CERTIFICATE OF SERVICE

I certify that the foregoing **Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss And Motion To Amend Case Caption** in the case of *Lauderdale* v. *Small* (Civil Action No. 06-955 (CKK)) was served by United States mail on:

Jane M. Lyons
Assistant U.S. Attorney
555 4th Street, N.W., Room E4822
Washington, D.C. 20530


on August 24, 2006.

_____
Alex Bastani
(202) 219-6941